

**SO ORDERED.**
**SIGNED this 12th day of March, 2012**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

**SHARON KAY HILLIARD ,**     Case No. 11-13347
                              Chapter 13

      **Debtor.**

Appearances:

    Mark T. Young, Mark T. Young & Associates, Hixson, Tennessee, for
    Sharon Kay Hilliard, debtor
    Kara L. West, Chattanooga, Tennessee, for C. Kenneth Still, Chapter 13 Trustee

The Honorable Shelley D. Rucker
United States Bankruptcy Court

_____

MEMORANDUM

The objection of the trustee to the Chapter 13 plan of Sharon Kay Hilliard came on for hearing on November 17, 2011. At that time the trustee and the debtor announced that they would be submitting the issues raised by the objection to the court on the basis of briefs and the court announced that it would render its opinion on January 19, 2012. At that time, the court read its oral opinion and now issues this written ruling at the request of the parties. To the extent that there are differences in citation, grammar or style from the opinion as originally read, the provisions of the written memorandum will supersede the oral opinion. The court previously has reviewed the briefs of counsel and the stipulated facts and the record in the bankruptcy case.

The issue before the court is whether the calculation of the amount that would be paid to creditors under the best interest of creditors test should include the debtor's entire interest in a piece of real estate and a mobile home. A divorce decree incorporating the marital dissolution agreement between the debtor and her ex-husband provided that 50% of the proceeds from any sale of the property and mobile home should be shared with the ex-husband if, and when, the property is sold. The debtor contends this provision created an equitable interest in the property on behalf of the debtor's ex-husband and his interest would be excluded from the bankruptcy estate, and, therefore, should be excluded from the calculation of what assets would be available to creditors in a hypothetical chapter 7. The trustee contends that the husband's interest is subject to being avoided and therefore should be included in the calculation. If it is, the debtor's proposed plan does not meet the best interest of creditors test under 11 U.S.C. § 1325(a)(4).

This court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for a decision

pursuant to 28 U.S.C. §157(a) and the standing order of the United States District Court, Eastern District of Tennessee, entered July 18, 1984.

This contested matter is a core proceeding because it involves an issue concerning confirmation of the debtor's chapter 13 plan. 28 U.S.C. § 157(b)(2)(l). Venue is proper before the court based on 28 U.S.C. §§ 1408 and 1409.

Having considered the entire record in this case, the stipulated facts, and the arguments and the briefs of counsel, the court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**Facts**

By order entered September 16, 2008, the debtor obtained a divorce from her husband in Bledsoe County, Tennessee. The divorce decree incorporated a marital dissolution agreement (the "MDA") signed by the debtor on April 8, 2008, and by her husband on April 7, 2008. According to both the divorce decree and the MDA, the debtor was awarded a mobile home and ten and a half acres of land in Pikeville, Tennessee. The decree further provided that when, or if, the mobile home and the land are sold, both the debtor and her husband would receive one-half of the proceeds. The debtor's ex-husband executed a quitclaim deed on September 15, 2008 transferring all of his interest to the debtor. It was recorded on January 10, 2009, in the Office of the Register of Deeds for Bledsoe County, Tennessee. Neither the divorce decree nor the MDA were recorded. There is no other evidence in the real property records that the ex-husband had an interest in one-half of the proceeds, if the property were sold.

On June 22, 2011, the debtor filed a chapter 13 petition in bankruptcy. Her plan proposes to pay $500 per month for twenty-three months, and $95 per month for twenty-four months. Unsecured creditors will receive a pro-rata distribution of any funds remaining after payments on

3

the secured and priority claims. If all payments were remitted as proposed, the debtor will pay $13,780 over the life of the plan. According to the trustee's calculations, secured and priority claims will receive approximately $9,600 leaving a balance of $4,180 for unsecured creditors. As of the claims bar date of November 8, 2011, unsecured claims totaled $23,819.38. Unsecured creditors are projected to receive a dividend of 17.5%.

The court takes judicial notice that Mr. Hilliard, the debtor's former spouse, has not filed a claim. He is not listed as a creditor on Schedule F and does not appear to have received notice of the filing. On the debtor's schedules, she has stated that she holds no property for another. *Statement of Financial Affairs, question 14* [Doc.No. 1]. She claims that her ex-husband has a one-half interest in the property, per the divorce decree, on Schedule A. She lists no unsecured priority claims on Schedule E, and Mr. Hilliard is listed as a co-debtor on Schedule H on a debt to First Bank of Dayton.

The trustee objected to the confirmation of the debtor's plan on the ground that it failed to meet the best interest of creditors. The objection is based on the trustee's contention that the value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is less than the amount that would be paid on such claim if the debtor's estate were liquidated in a chapter 7 case. 11 U.S.C. § 1325(a)(4). According to schedule A, the debtor valued the real property and mobile home at $60,000. She lists no liens against the property. The debtor claims a homestead exemption of $25,000 pursuant to Tennessee Code Annotated § 26-2-301(f). *Schedule C-Property Claimed as Exempt* [Doc. No. 1]. In a chapter 7 case, a sale of the property for $60,000 less the $25,000 exemption would generate, at most, a dividend of $35,000 to unsecured creditors compared to the $4180 proposed in the plan if the husband's one half interest is included.

4

**Analysis**

.	There are several issues the court must address before reaching a conclusion that creditors would receive more in a chapter 7 than they would under the proposed plan. The divorce decree provides that if the property is sold, half of the proceeds must be paid to the debtor's ex-spouse. If that occurred, then only $30,000 (the debtor's half) less the debtor's $25,000 exemption would be available. The debtor contends that her ex-husband retains a one-half interest in the property pursuant to the terms of the divorce decree. This contention is consistent with the debtor's schedules. The state court apparently intended the parties to split any sale proceeds when it entered the divorce decree. If this were just an action between the Hilliards outside of bankruptcy, then Tennessee law, which controls this issue, would require that result.

> As an initial matter, the [divorce court] had the authority to divest and vest title by decree, rather than by order that the Debtor convey the Real Property by quit claim deed, and that decree would be entitled the same force and effect as a conveyance by quit claim deed. *See* Tenn. Code Ann. § 16-1-108 (1994); § 16-1-109(1994); § 36-4-121(3)(West 2001 & Supp.2003)("[In all actions for divorce or legal separation], the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties.").

*Mostoller v. Kelley (In re Kelley),* 304 B.R. 331, 335-36 (Bankr. E.D. Tenn. 2003).

Here the parties in the state court did not appear to want to displace the debtor and to, perhaps, require Mr. Hilliard to have to pay for support when the debtor had a home, which appears to have been paid for. The state court simply provided that the parties would divide the proceeds when the home was sold.

5

State law determines the property interest in a bankruptcy estate unless there is some countervailing bankruptcy policy. *Arango v. Third Nat'l Bank (In re Arango)*, 992 F.2d 611, 612 (6th Cir. 1993); *Mostoller v. Kelley (In re Kelley),* 304 B.R. 331, 335 (Bankr. E. D. Tenn. 2003). Here the trustee contends that there is a countervailing policy -- the bankruptcy policy of equitable distribution. He contends that this policy supported by his avoidance powers trumps the determination of the husband's interest as stated by the divorce decree, especially in cases in which the non debtor claiming the interest has failed to take those actions which would ensure his priority over other creditors. For example, Mr. Hilliard could have recorded the divorce decree or the MDA. Tenn. Code Ann. § 66-24-101 (10) and (18). If he had done so, then no trustee could use that trustee's status as a bona fide purchaser under Section 544 to avoid Mr. Hilliard's interest in the proceeds of any sale. Because neither the decree nor the MDA was recorded, the trustee argues that the calculation of what would be paid to creditors in a chapter 7 should include the value of those interests that he could avoid and recover for the estate – even an interest which may have been granted to the ex-spouse in a divorce decree. In a case in which a chapter 7 trustee attempted to avoid a former spouse's interest, the court found that the failure to record an interest resulted in the trustee having a basis to avoid that interest granted by the state court. *Mostoller v. Kelley* (*In re Kelley),* 304 B.R. 331 (Bankr. E. D. Tenn. 2003). In that case the real estate records did not accurately reflect the interest of the owners of the property and the trustee's status as a bona fide purchaser allowed her to have priority over the other spouse's interest.

If the property were brought back into the estate, then upon the sale of the property, a chapter 7 trustee would have substantially more to distribute to creditors than the $4,180 that has been proposed. However, the court also notes that the trustee fails to include in his analysis the

6

other half of the equation. The best interest of creditors test is not whether there is more to distribute in a chapter 7 proceeding but rather whether the creditors would receive more in this chapter 13 case than they would in a chapter 7. To calculate what would be received in a Chapter 7, the court must also include what liabilities this avoidance action would bring into the estate. In this case, avoiding Mr. Hilliard's interest in the proceeds will create a claim in an equal amount. Mr. Hilliard has been scheduled as a co-owner rather than a creditor by the debtor. Under the trustee's approach, Mr. Hilliard's interest would change to that of a creditor and he would have an opportunity to file a claim for his interest that the trustee would have avoided.

Before the court can engage in the calculation, it must also address whether the debtor has equitable title to 100% of the property or only 50%. The debtor urges the court to recognize that an equitable interest was conveyed to her husband and to impose an equitable trust on the property as the Sixth Circuit did on the pension interests of the debtor in *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir 1996).

In reviewing the briefs in the case before the court, neither party cites the court to a case directly on point on the equitable trust issue, i.e., one which involves the hypothetical avoidance issues that arise in analyzing confirmation requirements and the imposition of a constructive trust on real estate arising from a divorce decree. The debtor cites a number of cases in which the courts followed the dictates of the state court MDAs or divorce decrees, but they all involved pension plans. The courts found that those pension plans were different because they are excepted from the claims of creditors. As such, they found that the equitable distribution policy considerations of the bankruptcy code did not come into play. *Hines. v. Hines (In re Hines),* 193 Fed. Appx. 391 (B.A.P. 6th Cir. 2006); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir 1996).

7

The cases in which Tennessee court's used constructive trusts cited in the trustee's brief involved insurance proceeds which are not subject to the recording requirements for real properties. *Hinkle v. Estate of Harman*, 2007 WL 700973 (Tenn. Ct. App. 2007); *Keeton v. Daniel*, 2006 WL 2818238 (Tenn. Ct. App. 2006); *Briceno v. Briceno*, 2007 WL 4146280 (Tenn. Ct. App. 2007); *Rider ex rel. Rider v. Rider*, 2003 WL 22345475 (Tenn. Ct. App. 2003). One of the trustee's cases also involved a resulting trust rather than a constructive trust, and it involved a common law marriage so there was no divorce decree on which the debtor could rely to argue that the decree divested the property prepetition. *Keeton v. Daniel*, 2006 WL 2818238 (Tenn. Ct. App. 2007). In addition, the cases rejecting the application of constructive trusts in bankruptcy contexts do not specifically address whether the bankruptcy policies espoused in the 2005 changes to the bankruptcy code, which granted priority to domestic support obligations and the special status of debts created by divorce decrees should now be included in balancing the equitable distribution to creditors.

Some of the characteristics of each of the cases are present in the case before the court. The issues in this case are located at the crossroads of several legal concepts and competing policies. In an effort to reconcile the cases and to balance the policies, the court, after review of the record, the case law, and the well written briefs of both counsel, finds that Tennessee courts have viewed the marital dissolution agreement as a contract. *See, e.g., Hinkle v. Estate of Harman*, 2007 WL 700973 (Tenn. Ct. App. 2007); *Briceno v. Briceno*, 2007 WL 4146280 (Tenn. Ct. App. 2007). If the marital dissolution agreement is not complied with, it gives rise to a claim. *Hohenberg v. Hohenberg* (*In re Hohenberg*), 143 B.R. 480, 487 (Bankr. W. D. Tenn. 1992). To the extent that a divorce decree also divests one party of a property interest, Tennessee law requires the recipient of the interest to perfect his interest in the real property by

8

putting that interest of record. *Kelley v Kelley (In re Kelley),* 304 B.R. 331 (Bankr. E. D. Tenn. 2003). Using the same reasoning, this court finds that if the divorce decree grants an interest in property, that interest must also be recorded to be effective against third parties. Tenn. Code Ann. § 25-5-102. If the third party fails to record his interest, the bankruptcy courts will not impose a constructive on the debtor's interest because of the bankruptcy policy of ensuring equitable distribution. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc. ),* 16 F.3d 1443 (6th Cir. 1994). If the property in question is not subject to the claims of creditors or will not affect the distribution available to creditors, then, where there is a divorce decree or MDA granting an interest in property to a non debtor, the court will make an exception to the "no imposition of a contructive trust" rule, and protect the division of the property by imposing a constructive trust. *McCafferty v. McCafferty (In re McCafferty*), 96 F.3d 192 (6th Cir 1996).

This exception to the recording requirement would allow a bankruptcy court to recognize a constructive trust which will remove the property from the estate so long as the bankruptcy consideration of equitable distribution of the creditors does not come into play. For example, if the real property were subject to an exemption, it would not be available to creditors even if it were recovered by a trustee. If the property is available to creditors, then the bankruptcy equitable considerations come into play and the bankruptcy court will not impose a constructive trust post petition.. Here, there is no notice in the real property records of the ex-spouse's interest. A chapter 7 trustee could avoid the interest and sell the property free and clear of Mr. Hilliard's interest. The value of the real property exceeds the exemption value so there would be some value available to creditors in a chapter 7 such that the equitable considerations of bankruptcy come into play. Therefore, the court will not impose or recognize a constructive trust under these circumstances that reduces the debtor's equitable interest in the property.

Turning finally to the calculation to determine whether the plan meets the best interest of creditors test, the court finds that the value of the recovery from potential avoidance actions in a hypothetical chapter 7 should be included in what would be distributed to creditors in a Chapter 7. KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY §160.1 at ¶ 30 (4th ed. 2009)(section revised June 7, 2004). However, the calculation is not a simple comparison of the sum of the value of the debtor's equity plus the value of the avoided interest to the value of distributions to unsecured creditors under the plan. The value of the avoided interest must reflect the probability of success of the hypothetical chapter 7 trustee, the expense of the recovery action , the claims created by the avoidance, the dilution of the distribution to the unsecured creditors, and any other consideration that might affect the dividend that creditors in the hypothetical chapter 7 would receive. In this case, the trustee contends that the plan payment should be $568 per month, which would generate about an additional $14,000 for unsecured creditors over the current proposal. The parties did not stipulate how the trustee arrived at that number. There are no specific calculations regarding the source of that number.

The court, based on its finding that the entire property interest should be included in the calculation, will sustain the trustee's objection. However, the court will also grant the debtor twenty-one days to amend the plan to comply with the court's finding that the entire interest of the real property and mobile home should be included in the estate's calculation. The calculation of the additional amount to be paid to satisfy the best interests of creditors test should include a determination of what the former spouse's claim would be if his interest is avoided, the cost and risks of litigation, the cost of sale, and the payment to secured creditors if there are, in fact, any liens against the mobile home or the real property. [1] *In re Sitars*, 150 B.R. 710 (Bankr. D. Minn.

---

[1] The court notes there was one point in the schedules where the debtor indicated that First Bank of Dayton had a lien on a mobile home which may or may not be the same mobile home in

1993).  *See* KEITH M. LUNDIN AND WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY §160.1, ¶¶ 30-32 (4th ed.)(section revised June 7, 2004).

A separate order will enter.

# # #

---

which the debtor is claiming an exemption. *Schedule D – Creditors Holding Secured Claims* [Doc.No. 1].